## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

ROBINETTE LONG,

       Plaintiff,

v.                                      No. CIV 13-380 RB/SMV

EASTERN NEW MEXICO UNIVERSITY
BOARD OR REGENTS, LEE QUICK,
JANE BLAKELEY, SCOTT SMART, KATHY
KNOLL, and JULIE GAWEHN,

       Defendants.

### MEMORANDUM OPINION AND ORDER

After being fired, Plaintiff Robinette Long sued her former employer for violations of federal and state law. Defendants, all affiliated with Eastern New Mexico University, moved to dismiss the Complaint. (Doc. 73.) Having reviewed the parties' submissions and arguments, the Court **GRANTS** the motion in part and **DENIES** the motion in part.

### I.      Background

Plaintiff began working for Defendant Eastern New Mexico University ("ENMU") in 1992. (Am. Compl., Doc. 4 ¶ 15.) Initially a department secretary, Plaintiff worked her way up and became a buyer for ENMU. (Doc. 4 ¶ 16; Doc. 73 at 2.)

Defendant Lee Quick, a fellow ENMU employee, worked in the same building as Plaintiff. (Doc. 4 ¶ 17.) Defendant Quick repeatedly invited Plaintiff out for lunch and for engagements after work, but Plaintiff always declined. (Doc. 4 ¶ 17.) Defendant Quick would also touch Plaintiff in an "unwelcome and painful" manner. (Doc. 4 ¶ 17.) Sometimes he would push down on a tumor on Plaintiff's shoulder even though it caused her pain. (Doc. 4 ¶ 18.)

Plaintiff complained about Defendant Quick's unwelcome touching and invitations to her supervisor, Defendant Jane Blakely, and ENMU's Comptroller, Defendant Kathy Knoll.  (Doc. 4 ¶ 18.)  Defendants Blakely and Knoll dismissed Plaintiff's complaints about the harassment and told Plaintiff to "be the bigger person."  (Doc. 4 ¶ 18.)

On January 31, 2012, Defendant Quick yelled at Plaintiff and threatened her with clenched fists.  (Doc. 4 ¶ 19.)  Plaintiff, who suffered from post-traumatic stress disorder ("PTSD"), was traumatized by the encounter.  (Doc. 4 ¶¶ 1, 19.)  That afternoon, Plaintiff informed Defendants Blakely and Knoll about the incident and her distress.  (Doc. 4 ¶ 20.)  Defendants Blakely and Knoll told Plaintiff that she should not allow Defendant Quick to do such things.  (Doc. 4 ¶ 20.)  The next day, Plaintiff wrote Defendants Blakely and Knoll an email describing Defendant Quick's "habitual" solicitations and sometimes violent behavior.  (Doc. 4 ¶ 21.)

Defendant Knoll advised Plaintiff to take a week off and informed her that Defendant Quick would be instructed to enter the warehouse only for legitimate, work-related reasons.  (Doc. 4 ¶ 22.)  Plaintiff claims that Defendants did not enforce this so-called agreement.  When Plaintiff returned to work, she still saw Defendant Quick during her work day and suffered work-related stress because of the encounters.  (Doc. 4 ¶ 23.)

On February 27, 2012, Plaintiff informed ENMU's Vice President of Business Affairs, Defendant Scott Smart, about Defendant Quick's history of harassment and intimidation.  (Doc. 4 ¶ 24.)  Instead of conducting an investigation, Defendant Smart told Plaintiff that if he were in her position, he would quit his job.  (Doc. 4 ¶ 24.)  On March 6, 2012, Plaintiff informed Defendant Smart and ENMU's Director of Human Resources, Defendant Julie Gawehn, that she had PTSD and requested a transfer away from Defendant Quick as a reasonable accommodation.

(Doc. 4 ¶ 25.)   Defendants denied the transfer.   (Doc. 4 ¶ 25.)   Plaintiff requested, as a compromise, that Defendant Quick be ordered to have no contact or minimal contact.   (Doc. 4 ¶ 26.)  Defendant Smart again suggested the Plaintiff should quit her job.  (Doc. 4 ¶ 27.)

At some point, unstated in the Complaint, Plaintiff took Family Medical Leave Act ("FMLA") leave because of her PTSD.  (Doc. 4 ¶ 20.)  Defendants Gawehn, Blakely, and Smart repeatedly told Plaintiff that she would not have job protection once her twelve weeks of FMLA leave were over.  (Doc. 4 ¶ 35.)  Defendants sent Plaintiff a poor performance review while she was on FMLA leave.  (Doc. 4 ¶ 34.)   While Plaintiff was still on FMLA leave, Defendants posted Plaintiff's position as vacant.  (Doc. 4 ¶ 36.)  Plaintiff submitted to Defendants a letter from her doctor that was ambiguous about Plaintiff's ability to return to work immediately. (Doc. 4 ¶ 39.)   As soon as Plaintiff's twelve weeks of FMLA leave expired, Defendants terminated Plaintiff.   (Doc. 4 ¶ 39.)   The parties did not identify the date of Plaintiff's termination.

On May 1, 2012, Plaintiff submitted paperwork requesting authorization to file a workers' compensation claim.   (Doc. 4 ¶ 30.)   Defendant Blakely refused to sign the authorization and told Plaintiff that her request would be denied.  (Doc. 4 ¶ 30.)  Six weeks later, on June 13, 2012, the Risk Management Division denied Plaintiff's applications for workers' compensation.  (Doc. 4 ¶ 32.)

Plaintiff filed a charge with the Equal Employment Opportunity Commission on May 21, 2012.  (Doc. 4 ¶ 31.)  She filed her Complaint with this Court on April 24, 2013.  (Doc. 1.)  In her Complaint, she named her employer, Defendant ENMU, several ENMU supervisors, and Defendant Lee Quick.  (Doc. 1; Am. Compl., Doc. 4.)  Defendants filed this current motion to dismiss the case.

## II.    Legal Standard

Defendants styled their motion as a motion to dismiss, or in the alternate, a motion for summary judgment.    (Doc. 73.)    Defendants asked the Court to review certain, limited documents in support of its arguments for dismissal.    Generally, courts consider only the four corners of the complaint when ruling on a motion to dismiss, but courts can consider "matters of which a court may take judicial notice."    *Tellabs, Inc. v. Makor Issues & Rights, Ltd*., 551 U.S. 308, 322 (2007); *see also Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010) (listing exceptions to the general rule that a court may only consider the four corners of the complaint when ruling on a motion to dismiss).    With this in mind, the Court treats this motion as a motion to dismiss.

In order to survive a motion to dismiss, a plaintiff's "complaint must have enough allegations of fact, taken as true, 'to state a claim to relief that is plausible on its face.'"    *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).    When reviewing the sufficiency of a complaint, the court must first identify the factual allegations and disregard any conclusory statements.    *See Hall v. Witteman*, 584 F.3d 859, 863 (10th Cir. 2009) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).    Next, the court must determine if the plaintiff's factual allegations state a plausible claim.    *Id.*    "A claim has facial plausibility when the [pleaded] factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."    *Iqbal*, 556 U.S. at 678.

The complaint need not recite "detailed factual allegations, but the factual allegations must be enough to raise the right to relief above the speculative level."    *Christy Sports, LLC v. Deer Valley Resort Co.*, 555 F.3d 1188, 1191 (10th Cir. 2009) (quoting *Twombly*, 550 U.S. at

556) (internal quotations omitted).  "Plaintiff's general assertions of discrimination and retaliation, without any details whatsoever of events leading up to her termination, are insufficient to survive a motion to dismiss."  *Khalik v. United Air Lines*, 671 F.3d 1188, 1193 (10th Cir. 2012).

### III.   Discussion

Plaintiff alleges several claims, ranging from state contract claims to violations of constitutional law.  Defendants claim that they are immune from Plaintiff's claims based on the Eleventh Amendment, sovereign immunity, or qualified immunity.  If not immune, Defendants argue that Plaintiff has failed to state a claim.  The Court looks at each claim individually.

### A.  FMLA Claim

In Count 1, Plaintiff claims that Defendants violated her rights under FMLA.  The Act expressly prohibits employers from interfering with employees' rights to take FMLA leave.  *See* 29 U.S.C. § 2615(a)(1).  Defendants argue that the Eleventh Amendment bars this suit against them.  (Doc. 73 at 9.)  In fact, the Supreme Court ruled that the Eleventh Amendment bars suits from litigants who, like Plaintiff, requested leave for self-care and seek damages against a state. *Coleman v. Court of Appeals of Maryland*, 132 S. Ct. 1327, 1332 (2012).

For other federal laws, the Tenth Circuit recognizes an *Ex Parte Young* exception which allows plaintiffs to bring suits against state officials so long as they seek prospective injunctive relief.  *See, e.g.*, *Frazier v. Simmons*, 254 F.3d 1247, 1255 (10th Cir. 2001) (plaintiff suing under ADA can seek prospective injunctive relief against state officer); *Buchwald v. Univ. of New Mexico Sch. of Med.*, 159 F.3d 487, 495 (10th Cir. 1998) (plaintiff pursuing constitutional rights can seek prospective injunctive relief against state officers).  Given the Circuit's prior rulings, the Court finds that the exception applies here.  *See Cornforth v. Univ. of Oklahoma Bd. of*

*Regents*, 263 F.3d 1129, 1134 (10th Cir. 2001) (reasoning that the *Ex Parte Young* exception would apply to FMLA); *accord Coleman*, 132 S. Ct. at 1350 (Ginsburg, J., dissenting) ("An employee wrongly denied self-care leave . . . may, pursuant to *Ex parte Young*[], seek injunctive relief against the responsible state official.").

Under the *Ex Parte Young* doctrine, a plaintiff cannot seek damages and cannot directly subject the state to suit. *See Buchwald*, 159 F.3d at 495. Thus, Plaintiff's FMLA claims against Defendant ENMU and its Regents are barred. A plaintiff may, however, seek prospective injunctive relief against state officers who are sued in their official capacities. *Id.* Here, Plaintiff sued ENMU officers and sought reinstatement. (Compl. at 21; Pretrial Conf., Jan. 9, 2015.) The Eleventh Amendment does not bar this prayer for reinstatement. *See Meiners v. Univ. of Kansas*, 359 F.3d 1222, 1232 (10th Cir. 2004) ("Reinstatement of employment is a form of prospective equitable relief that is within the doctrine of *Ex parte Young*."). Thus, the Court will consider Plaintiff's request for reinstatement under FMLA.

Having ruled that Plaintiff may bring this particular claim, the Court now assesses whether the Complaint states a plausible claim. In assessing plausibility, the Court is guided by the requirements for a prima facie case. To make a prima facie case for interference, a plaintiff must allege that "(1) that she was entitled to FMLA leave, (2) that some adverse action by the employer interfered with her right to take FMLA leave, and (3) that the employer's action was related to the exercise or attempted exercise of her FMLA rights." *Campbell v. Gambro Healthcare, Inc.*, 478 F.3d 1282, 1287 (10th Cir. 2007) (quoting *Jones v. Denver Pub. Sch.*, 427 F.3d 1315, 1319 (10th Cir. 2005)).

The parties agree that Plaintiff was eligible for FMLA leave. The plausibility of Plaintiff's claim turns on whether Defendants violated the FMLA in a way that entitles her to

relief.  Plaintiff claims that Defendants harassed her while she was on leave and misinformed her about her FMLA rights.  (Doc. 4 ¶¶ 34-35, 37.)  Purportedly, Defendants Gawehn, Blakely, and Smart repeatedly told Plaintiff that she would not have job protection once her twelve weeks of FMLA leave were over and sent her a poor performance review while she was on leave.  (Doc. 4 ¶¶ 34-35.)  Most troublingly, Plaintiff alleges that Defendants advertised her position as vacant while she was still on lawful FMLA leave.  (Doc. 4 ¶ 36.)  Defendants then notified Plaintiff about their advertisement.  (Doc. 4 ¶ 36.)  Plaintiff claims that Defendants' harassment exacerbated her PTSD symptoms and made it more difficult for her "to promptly return to her former position."  (Doc. 4 ¶ 71.)

By the express terms of the statute, the FMLA prohibits employers from "interfere[ing] with, restrain[ing], or deny[ing] the exercise of or the attempt to exercise, any right provided under [the Act]."  29 U.S.C. § 2615(a)(1).  FMLA creates the right for employees on protected leave to be reinstated "to the position of employment held by the employee when the leave commenced."  29 U.S.C. § 2614(a)(1)(A).  Plaintiff's factual averments state a plausible claim that Defendants interfered with her right to reinstatement under FMLA.  *Accord Speight v. Sonic Restaurants, Inc.*, 983 F. Supp. 2d 1324, 1328 (D. Kan. 2013) (finding an FMLA violation when plaintiff's manager removed her from the work schedule without explanation, making plaintiff believe she was fired).  The Court finds that Plaintiff alleged sufficient facts to state a plausible claim for FMLA interference.

**B.  Title VII Claims**

In Counts 1 and 4, Plaintiff claims that Defendants violated her rights under Title VII.  It is unclear from the Complaint which theory Plaintiff intends to invoke.  The Court will consider a discrimination claim, a retaliation claim, and a hostile work environment claim.  Defendants

argue, without support, that they are immune from Title VII money damages suits under the Eleventh Amendment.  (Doc. 73 at 10.)  To the contrary, the Supreme Court ruled that Congress properly abrogated states' Eleventh Amendment immunity by passing Title VII pursuant to section five of the Fourteenth Amendment.  *Fitzpatrick v. Bitzer*, 427 U.S. 445, 456 (1976).  Alternatively, Defendants argue that Plaintiff has failed to allege sufficient facts for any Title VII claim.  (Doc. 89 at 8.)  The Court agrees.

### 1.  *Discrimination Claim*

To set forth a claim for discrimination, a plaintiff must allege that (1) she is a member of a protected class, (2) she suffered an adverse employment action, (3) she qualified for the position at issue, and (4) she was treated less favorably than others not in the protected class.  *See Khalik*, 671 F.3d at 1192 (citing *Sanchez v. Denver Pub. Sch.*, 164 F.3d 527, 531 (10th Cir.1998)).

For the first prong, Plaintiff claims she suffered sex discrimination.  (Doc. 4 ¶ 51.)  Sex is a protected class.  For the second prong, Plaintiff says her employment was terminated, a clear adverse action.  (Doc. 4 ¶ 15.)  On the third prong, the Court will assume for the purposes of this Motion that Plaintiff was qualified for the job she was hired to perform.  The only question left is whether Plaintiff can meet the fourth prong—was she treated less favorably than others not in the protected class?

Plaintiff argues that because she was denied the opportunity to take alternate leave, Plaintiff lost her job.  Her discrimination claim centers on the idea that other employees were able to take sick or annual leave after exhausting their FMLA leave while Plaintiff was not.  (Doc. 4 ¶¶ 42, 49, 56.)

Plaintiff's allegation is too broad and too general.  If allegations are "so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs have not nudged their claims across the line from conceivable to plausible."  *Khalik*, 671 F.3d at 1191 (quotations omitted).  She does not offer any examples of her supervisors engaging in sex discrimination. Nor does she ever allege that the "other employees" were not in her protected class—in other words, she never says that males were treated more favorably.  *See id.* at 1194 (affirming dismissal where complaint failed to allege that similarly situated employees were treated better). Without any allegations that one class was treated better than another protected class, the facts do not support a claim of discrimination under Title VII.  Plaintiff's claim of sex discrimination is dismissed.

### 2.  *Retaliation Claim*

Title VII prohibits employers from discriminating against employees "because [they] ha[ve] opposed any practice made an unlawful employment practice" by the Act.  42 U.S.C. § 2000e-3(a).  To state a prima facie claim of retaliation under Title VII, a plaintiff must allege (1) she opposed a violation of Title VII; (2) she suffered an adverse employment action; and (3) there is a causal connection between the opposition activity and the adverse employment action. *Meiners*, 359 F.3d at 1229 (citing *O'Neal v. Ferguson Constr. Co.*, 237 F.3d 1248, 1252 (10th Cir. 2001)).

Plaintiff's Complaint falls shy of stating a plausible Title VII retaliation claim.  She successfully alleges that she opposed violations of Title VII and that she suffered an adverse action.  First, she complained to her superiors, in seeming good faith, that Defendant Quick was subjecting her to sexual harassment.  (Doc. 4 ¶¶ 17, 18, 21, 24.)  That constitutes protected opposition activity under Title VII.  *See Hertz v. Luzenac Am., Inc.*, 370 F.3d 1014, 1015 (10th

9

Cir. 2004) ("Protected opposition can range from filing formal charges to voicing informal complaints to superiors."). Second, she was terminated, a clear adverse action. (Doc. 4 ¶ 15.) However, Plaintiff does not allege any facts to support a causal connection between the two acts.

A close temporal proximity can support an inference that protected activity and the adverse action were connected. *See Annett v. Univ. of Kansas*, 371 F.3d 1233, 1240 (10th Cir. 2004) (citing cases where an adverse action one to two months after protected activity supported a prima facie case of retaliation). While Plaintiff states in her Complaint the specific dates when she complained to supervisors, she does not state the date when her employment was terminated. That alone could be sufficient to dismiss the claim. *See Khalik*, 671 F.3d at 1194 (affirming dismissal for failure to state a claim, reasoning that the plaintiff "should know generally when she complained . . . and when she was terminated"). Given that Plaintiff was terminated at the end of her FMLA leave, the Court surmises that she was terminated approximately twelve weeks, or slightly less than three months, after opposing the sexual harassment. A less than "three-month period [between the opposition and the adverse action], standing alone, is insufficient" to support a causal inference. *Meiners*, 359 F.3d at 1231; *see also Hanson v. Colorado Judicial Dep't*, 564 F. App'x 916, 919-20 (10th Cir. 2014) (quoting same). "[U]nless the termination is *very closely* connected in time to the protected activity, the plaintiff must rely on additional evidence beyond temporal proximity to establish causation." *Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1179 (10th Cir. 1999).

Moreover, "temporal proximity has minimal probative value in a retaliation case where intervening events between the employee's protected conduct and the challenged employment action provide a legitimate basis for the employer's action." *Twigg v. Hawker Beechcraft Corp.*, 659 F.3d 987, 1001-02 (10th Cir. 2011). Here, between the time Plaintiff complained about the

harassment and her termination, she was unable to return to work after twelve weeks of FMLA. While Plaintiff may have legal theories for challenging her inability to return to work, it does not erase the fact that her failure to return to work provided an intervening event that "undermines[s] her temporal-proximity argument" –that is, if she had any temporal-proximity argument.  *Id.* at 1002.

Without any facts suggesting that Plaintiff's termination was causally connected to her complaints, Plaintiff's claim is merely speculative.  Plaintiff's claim for retaliation under Title VII is dismissed.

### 3.  *Hostile Work Environment*

The final theory Plaintiff could have raised under Title VII is a hostile work environment claim.  To state a hostile work environment claim, a plaintiff must show "(1) that she was discriminated against because of her sex; and (2) that the discrimination was sufficiently severe or pervasive such that it altered the terms or conditions of her employment and created an abusive working environment."  *Morris v. Colorado Springs*, 666 F.3d 654, 663 (10th Cir. 2012) (quoting *Pinkerton v. Colo. Dep't of Transp.*, 563 F.3d 1052, 1058 (10th Cir. 2009)); *see also Mobley v. Dillon Companies, Inc.*, 153 F.3d 727, 1998 WL 314589, at *3 (10th Cir. 1998) (affirming dismissal of claim because the harassment "must be sufficiently severe or pervasive to alter the conditions of the plaintiff's employment and create an abusive working environment").  "A plaintiff must show that the environment was both objectively and subjectively hostile or abusive."  *Morris*, 666 F.3d at 664 (quoting *Davis v. U.S. Postal Serv.*, 142 F.3d 1334, 1341 (10th Cir. 1998)).

Plaintiff's Complaint manifests a subjective impression that her work environment was hostile and abusive.  She alleges that Defendant Quick "periodically subjected Plaintiff to

unwelcome and painful physical touching and to unwelcome social invitations . . . out to lunch, to work-out, [and] to basketball game[s]." (Doc. 4 ¶ 17.) She complains that Defendant Quick would push down on her shoulder tumor, causing her pain. (Doc. 4 ¶ 18.) She also describes an incident where he "red-faced and angry, physically and verbally assaulted Plaintiff" by yelling and clenching his fists. (Doc. 4 ¶ 19.)

The Tenth Circuit, however, has established a high standard for what can be considered "sufficiently severe or pervasive" under an objective standard. *See Morris*, 666 F.3d at 663-64. "A plaintiff does not make a sufficient showing of a pervasively hostile work environment by demonstrating a few isolated incidents of sporadic slurs. Instead, there must be a steady barrage of opprobrious comments." *Id.* at 666 (quotations omitted). In *Morris*, the Tenth Circuit affirmed a judgment on the pleadings where a supervising physician hit the plaintiff on the head twice, regularly yelled demeaning comments, and "intentionally" threw organ tissue at her while they were in the operating room. *Id.* The Tenth Circuit ruled that this conduct was not sufficient to be considered "pervasive." *Id.* Nor did the Tenth Circuit consider the allegations of harassment "severe." *Id.* Given the standard laid out in *Morris*, Plaintiff's allegations of social invitations, tumor-pushing, and red-faced yelling do not meet the Tenth Circuit's threshold for "severe or pervasive."

Plaintiff has not alleged sufficient facts to state a hostile work environment claim under Title VII.

### C. ADEA Claim

In Counts 1 and 4, Plaintiff claims that Defendants violated her rights under the Age Discrimination in Employment Act ("ADEA"). Defendants claim that they are immune from ADEA suits under the Eleventh Amendment and the Supreme Court precedent in *Kimel v.*

*Florida Bd. of Regents*, 528 U.S. 62 (2000).  In *Kimel*, the Supreme Court held that states are immune from money damages suits that private plaintiffs bring to enforce the ADEA.  528 U.S. at 91.  By the clear terms of this ruling, Plaintiff's claims for money damages are barred.

A majority of the Circuits, however, determined that a private plaintiff can enforce the dictates of the ADEA by suing for injunctive relief under the *Ex Parte Young* exception.  *See State Police for Automatic Ret. Ass'n v. DiFava*, 317 F.3d 6, 12 (1st Cir. 2003) (holding that a plaintiff may sue for injunctive relief to enforce ADEA under the *Ex Parte Young* exception); *Natarelli v. VESID Office*, 420 F. App'x 53, 55 (2d Cir. 2011) (reasoning that a plaintiff could have pursued equitable relief to enforce ADEA violations); *Shahin v. Delaware*, 563 F. App'x 196, 198 (3d Cir. 2014) (reasoning that a plaintiff may sue for injunctive relief to enforce ADEA under the *Ex Parte Young* exception); *McGarry v. Univ. of Mississippi Med. Ctr.*, 355 F. App'x 853, 857 (5th Cir. 2009) (same); *Meekison v. Voinovich*, 67 F. App'x 900, 901 (6th Cir. 2003) (same); *Peirick v. Indiana Univ.-Purdue Univ. Indianapolis Athletics Dep't*, 510 F.3d 681, 695 (7th Cir. 2007) (same); *but see Ahlmeyer v. Nevada Sys. of Higher Educ.*, 555 F.3d 1051, 1060 (9th Cir. 2009) (holding that the ADEA's remedial scheme precludes the *Ex Parte Young* exception).  This Court is persuaded by the weight of the authority.  Similar to her FMLA claim, because Plaintiff named ENMU officers and requests reinstatement, Plaintiff can proceed with her ADEA claim under the *Ex Parte Young* exception.

Defendants alternatively argue that Plaintiff did not allege any facts to support her ADEA claim.  (Doc. 73 at 12.)  The ADEA makes it "unlawful for an employer . . . to discharge any individual . . . because of such individual's age."  29 U.S.C. § 623(a)(1).  To state a plausible claim for relief, Plaintiff needs to allege facts to support the inference that (1) she was terminated (2) because of her age.  Plaintiff alleges that she was born in 1960.  (Doc. 4 ¶ 14.)  However, that

13

is the only age-related factual allegation in the Complaint.  Plaintiff offers no examples of age-related animus, no comparators, nor any other facts to support her claim.  As such, Plaintiff's claim is purely speculative.  For that reason, Plaintiff's claim under the ADEA is dismissed.

### D.  ADA Claims

In Counts 2-5, Plaintiff claims that Defendants violated her rights under Title I of the Americans with Disabilities Act ("ADA").  Defendants argue that they are immune from suits brought under the ADA because of the Eleventh Amendment.  (Doc. 73 at 10.)  Similar to the ADEA and FMLA, the Supreme Court ruled that state employees are barred from seeking damages against states in ADA actions because of Eleventh Amendment immunity.  *See Bd. of Trustees of Univ. of Alabama v. Garrett*, 531 U.S. 356, 374 (2001).  And again, private plaintiffs may seek injunctive relief against state officials under *Ex Parte Young*.  *Id.* at 374 n.9; *Frazier*, 254 F.3d at 1255 (plaintiff suing under ADA can seek prospective injunctive relief against state officer).  Thus, Plaintiff's claims for money damages are barred, but her claim for reinstatement is not.  The Court will look to the sufficiency of the allegations for each ADA claim.

#### 1.  Failure to Accommodate

In Count 2, Plaintiff claims that Defendants failed to accommodate her disability in violation of the ADA.  Under the ADA, an employer engages in discrimination by "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability . . . ."  42 U.S.C § 12112 (b)(5)(A).  To ensure that employees and employers find workable accommodations, "[t]he federal regulations implementing the ADA 'envision an interactive process that requires participation by both parties.'"  *Smith v. Midland Brake, Inc.*, 180 F.3d 1154, 1171 (10th Cir. 1999) (en banc) (quoting *Templeton v. Neodata Services, Inc.*, 162 F.3d 617, 619 (10th Cir. 1998)).  "The obligation to

14

engage in an interactive process is inherent in the statutory obligation to offer a reasonable accommodation to an otherwise qualified disabled employee." *Id.* at 1172.

Again, the Court looks to the elements of a prima facie case to inform the analysis of whether Plaintiff has stated a plausible entitlement to relief. To make a prima facie case, Plaintiff must show "(1) she is a qualified individual with a disability; (2) the employer was aware of her disability; and (3) the employer failed to reasonably accommodate the disability." *Allen v. SouthCrest Hosp.*, 455 Fed. App'x 827, 830 n.2 (10th Cir. 2011) (quoting *Kotwica v. Rose Packing Co., Inc.*, 637 F.3d 744, 747-48 (7th Cir. 2011)).

Plaintiff's Complaint states a plausible claim that Defendant failed to provide her a reasonable accommodation. First, Plaintiff sufficiently alleges that she is a qualified individual with a disability, namely PTSD. (Doc. 4 ¶ 2, 16.) Second, Plaintiff informed Defendants Smart and Gawehn on March, 6, 2012, that she suffered from PTSD. (Doc. 4 ¶ 25.) Third, Plaintiff initiated the interactive process by requesting an accommodation, which the Defendants denied. (Doc. 4 ¶¶ 25, 26, 29, 41.) Plaintiff alleges that Defendant denied these requests without engaging in a good faith dialogue. (Doc. 4 ¶ 41.)

The accommodations Plaintiff requested were (1) a transfer so that she would not have to interact with Defendant Quick, or (2) a quasi-restraining order where Defendant Quick would be ordered to have minimal or no contact with Plaintiff. To be a considered a "reasonable accommodation" within the meaning of the ADA, the plaintiff must "only show that an 'accommodation' seems reasonable on its face, *i.e.*, ordinarily or in the run of cases." *U.S. Airways, Inc. v. Barnett*, 535 U.S. 391, 401-02 (2002). Job reassignments to vacant positions are, by Congress' definition, reasonable accommodations. 42 U.S.C. 12111(9)(B); *see also Midland Brake*, 180 F.3d at 1167 (citing same).

15

Because Plaintiff stated sufficient factual allegations to support her claim that Defendants failed to provide reasonable accommodations, the Defendants' motion to dismiss this claim is denied.

### 2.  *Hostile Work Environment*

In Count 3, Plaintiff claims that Defendants subjected her to a hostile work environment based on her disability and in violation of the ADA.  The Tenth Circuit permits hostile work environment claims under the ADA.  *Lanman v. Johnson Cnty., Kansas*, 393 F.3d 1151, 1156 (10th Cir. 2004).  Given the dearth of ADA hostile environment precedent, the Court will look to the standards set out in Title VII hostile environment claims.  *See id.* (reasoning that the statutory language in the ADA and Title VII "mean the same" and have "parallel purposes.").

To state a hostile work environment claim under ADA, a plaintiff must allege (1) that she was discriminated against because of her disability; and (2) that "the discrimination was sufficiently severe or pervasive such that it altered the terms or conditions of her employment and created an abusive working environment."   *See Morris*, 666 F.3d at 663 (stating requirements for a Title VII hostile work environment claim).   Plaintiff's hostile work environment claim based on disability discrimination runs into the same obstacle she faced in her hostile work environment claim for sex discrimination.  The only disability-related harassment that the Plaintiff claims to have suffered occurred when her supervisors brushed off her complaints.  When Plaintiff went to Defendant Smart to request accommodations, he "repeatedly made statements to Plaintiff suggesting that she should voluntarily quit her job."  (Doc. 4 ¶ 27.) This does not rise to the "severe and pervasive" standard necessary to maintain a hostile work environment claim.  *See Morris*, 666 F.3d at 663.

Plaintiff's hostile work environment claim arising under the ADA is dismissed.

### 3. *Retaliation*

In Count 4, Plaintiff claims that Defendants retaliated against her for demanding accommodations under the ADA.  Under the ADA, employers are prohibited from retaliating "against any individual because such individual has opposed any act or practice made unlawful by [the ADA]."  42 U.S.C. § 12203(a).  To establish a prima facie case of retaliation under the ADA, a plaintiff must show that (1) she opposed workplace discrimination, (2) she suffered an adverse employment decision, and (3) there is a causal connection between the protected activity and the adverse action.  *Fryer v. Coil Tubing* Servs*., LLC*, 415 Fed. App'x 37, 45 (10th Cir. 2011).

Plaintiff does not point to any particular protected activity.  Plaintiff filed EEOC charges on May 21, 2012, but based on the Complaint, the Court has no way of knowing if Plaintiff was terminated before or after she filed the charge.  (Doc. 4 ¶ 31.)  Alternatively, requesting an accommodation can be protected activity.  *Jones v. U.P.S., Inc.*, 502 F.3d 1176, 1194 (10th Cir. 2007).  Accordingly, if at no other time, Plaintiff engaged in protected activity on March 6, 2012, when she requested an accommodation.  (Doc. 4 ¶ 25.)

Plaintiff suffered an adverse employment action when she was terminated, but in order to state a claim for retaliation, Plaintiff needs to provide factual allegations that support an inference that her protected activity caused the adverse decision.  Again, the Court is left to surmise the timeline.  Plaintiff made her request for an accommodation over a month after she first complained about Defendant Quick's harassment.  (Doc. 4 ¶¶ 20, 25.)  Thus, the temporal proximity is much tighter between her ADA protected activity and her termination than it was between her Title VII protected activity and her termination.  Viewing the facts in the light most favorable to Plaintiff, the temporal proximity is close enough to support an inference that there

was a "causal connection" between her protected activity and her termination.  *See E.E.O.C. v. C.R. England, Inc.*, 644 F.3d 1028, 1051 (10th Cir. 2011) (holding that a causal connection can be supported by "evidence of circumstances that justify an inference of retaliatory motive, such as protected conduct closely followed by adverse action").  Additionally, Plaintiff alleges that Defendant Smart repeatedly told her to voluntarily quit her job when she requested her accommodations.  (Doc. 4 ¶ 27.)  Such statements could reveal a retaliatory animus that further supports Plaintiff's claim that her requests and termination were causally linked.

In sum, Plaintiff's Complaint states a plausible claim for retaliation under the ADA.

### 4. *Discrimination*

In Count 5, Plaintiff claims that Defendants terminated her employment in violation of the ADA.  The Court construes this to allege a discrimination claim.  The ADA prohibits "discriminat[ion] against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."  42 U.S.C. § 12112(a).  To make a prima facie case, Plaintiff must show "(1) that she is a disabled person within the meaning of the ADA; (2) that she is qualified, that is, she is able to perform the essential functions of the job, with or without reasonable accommodation; and (3) that the employer terminated her employment under circumstances which give rise to an inference that the termination was based on her disability."  *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir. 1997) (internal citations omitted).

Plaintiff's Complaint states a plausible claim that Defendant discriminated against her based on her disability.  First, Plaintiff sufficiently alleges that she is a qualified individual with a disability.  (Doc. 4 ¶ 2, 16.)  Second, viewing the facts in the light most favorable to Plaintiff, the

Court assumes that the Plaintiff was qualified for the job she was hired to perform and could have continued her job with reasonable accommodations. Third, similar to the claim for disability discrimination, Plaintiff alleges sufficient facts to support an inference that her termination was causally linked to her disability. Plaintiff was terminated soon after she advised Defendants that she was disabled and Defendant Smart responded to the information with comments that Plaintiff should "just" quit. (Doc. 4 ¶¶ 25, 27.)

Plaintiff stated a plausible claim that she is entitled to relief under the ADA based on a claim of discrimination.

**E. NMHRA Claims**

In Counts 2-4, Plaintiff claims that Defendants violated her rights under the New Mexico Human Rights Act ("NMHRA"). Plaintiff's NMHRA claims parallel her ADA claims. Defendants claim that Plaintiff's claims must be dismissed on procedural grounds. (Doc. 73 at 12.) Specifically, Defendants argue that because Plaintiff filed her claim in federal court and not a New Mexico state district court, she waived her right to appeal. (*Id.*) Citing to the New Mexico statute, Defendants argue that state district courts have exclusive jurisdiction over Plaintiff's appeals under the NMHRA. (*Id.*) For appeals from the New Mexico Human Rights Bureau, the New Mexico statute provides that "[t]he jurisdiction of the district court is exclusive and its judgment is final . . . ." N.M. Stat. Ann. § 28-1-13(C).

Several courts have grappled with the meaning of this statute. *Compare Clayton v. Pioneer Bank*, No. CIV 07-0680 JB/LAM, 2008 WL 5787472, at *9-10 (D.N.M. Dec. 31, 2008) (finding that federal courts can exercise supplemental jurisdiction over NMHRA appeals); *and Padilla v. Davis Selected Advisors, L.P.*, No. CIV 98-0186 JC/LFG, 1998 WL 35433888, at *7 (D.N.M. May 8, 1998) (same) (citing *Wojciechowski v. Harriman*, 607 F. Supp. 631, 634

(D.N.M. 1985)); *with Re v. Vistas*, 173 F.3d 864 (10th Cir. 1999) (stating in dicta that people seeking appeal under NMHRA may not sue in federal district court); *and Roybal v. City of Albuquerque*, 653 F. Supp. 102, 108 (D.N.M. 1986) (declining to exercise pendent jurisdiction over NMHRA claim because it was an unsettled question of law).  The Court is persuaded that federal courts may exercise jurisdiction over NMHRA appeals.

Federal district courts "shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."  28 U.S.C. § 1367(a). "The conferral [of jurisdiction] is in mandatory terms" though a court could "decline to exercise the supplemental jurisdiction in various circumstances."  *Id.* cmt.  This legislative grant of authority is "a creature of federal law . . . and state law may not control or limit federal jurisdiction."  *Wojciechowski*, 607 F. Supp. at 634.  "Because states may not abrogate a federal court's ability to exercise pendent jurisdiction, the exclusivity language of N.M. Stat. Ann. § 28–1–13(C) which purports to limit the jurisdiction of the federal court is ineffective."  *Padilla*, 1998 WL 35433888, at *7.

In sum, the Court indisputably has original jurisdiction over Plaintiff's federal claims. Because Plaintiff's claims under the NMHRA arise out of the same facts and controversy, the Court may exercise its jurisdiction over Plaintiff's state claims, including her NMHRA claims. Hearing the cases in common is an efficient use of judicial resources.  *See Sw. Bell Tel. Co. v. Brooks Fiber Commc'ns of Oklahoma, Inc.*, 235 F.3d 493, 498 (10th Cir. 2000) ("[I]t would be a waste of judicial resources to limit the court's consideration to federal issues only.").

Separately, Defendants argue that Plaintiff cannot maintain her NMHRA claims against Defendants in their individual capacities because Plaintiff did not exhaust her administrative

remedies against them.   (Doc. 73 at 13.)   The NMHRA defines "employer" as "any person employing four or more persons and any person acting for an employer."   N.M.S.A.1978, § 28–1–2(B).   The Supreme Court of New Mexico recognizes that individual defendants can be held personally liable under the NMHRA.   *Sonntag v. Shaw*, 22 P.3d 1188, 1193 (N.M. 2001). Defendants correctly contend that in order to hold a defendant individually liable, "a plaintiff must exhaust his or her administrative remedies . . . ."   *Id.*

Despite the exhaustion requirement, the New Mexico Supreme Court held that the NMHRA "Charge of Discrimination form fails to provide a fair and adequate opportunity to exhaust administrative remedies against individual defendants as required by the NMHRA." *Lobato v. State Env't Dep't*, 267 P.3d 65, 68 (2011).   As a result, the Supreme Court held that "the requisite administrative exhaustion of the NMHRA should not be required in order for Plaintiff to pursue [her] judicial remedies under the statute."   *Id.* at 69.   The Supreme Court suggested that the New Mexico's Human Rights Department amend its forms "to instruct filers in plain language to include the names and addresses of any individuals involved."   *Id.*   The Court takes judicial notice of the fact that the forms Plaintiff had to complete, six months after the *Lobato* opinion was issued, did not include this instruction.   (Docs. 73-1; 85-1.)   Thus, under *Lobato*, Plaintiff cannot be required to exhaust her administrative remedies before pursuing her NMHRA claims against Defendants in their individual capacities.

Because Plaintiff exhausted her NMHRA claims to the extent necessary, the court denies Defendants' motion to dismiss these claims.

### F.  Wrongful Termination Claim

In Count 5, Plaintiff claims that Defendants wrongfully terminated her in violation of New Mexico public policy.   New Mexico common law recognizes a separate tort of retaliatory

discharge.  *See Shovelin v. Cent. New Mexico Elec. Co-op., Inc.*, 850 P.2d 996, 1006 (N.M. 1993).  Defendants argue that they are immune from this tort under the New Mexico Tort Claims Act ("NMTCA").  (Doc. 73 at 15.)  They note that it is not enumerated anywhere in the statute. Under the NMTCA, "[a] governmental entity and any public employee while acting within the scope of duty are granted immunity from liability for any tort except as waived by [statute]." N.M. Stat. Ann. § 41-4-4.  Without an express waiver, New Mexico governmental entities are not liable for wrongful termination claims.  Thus, Plaintiff's wrongful termination claim is dismissed.

### G.  Workers Compensation Act

In Count 4, Plaintiff claims that Defendants retaliated against her for initiating a claim under New Mexico's Workers' Compensation Act.  Under New Mexico law, "[a]n employer shall not discharge, threaten to discharge or otherwise retaliate in the terms or conditions of employment against a worker who seeks workers' compensation benefits for the sole reason that that employee seeks workers' compensation benefits."  N.M. Stat. Ann. § 52-1-28.2.  In her Complaint, Plaintiff alleges that she filed a claim for workers' compensation benefits and that Defendants discharged her because of it.  (Doc. 4 ¶ 76.)

Defendants claim that Plaintiff is barred from bringing this claim because she did not exhaust her remedies with the New Mexico Workers' Compensation Administration.  (Doc. 73 at 14.)   Specifically, Defendants argue that Plaintiff must file her claim under the Workers' Compensation Act with the appropriate administrative division.  (Doc. 73 at 14.)  Generally, "administrative procedures must be exhausted before the court gains jurisdiction."  *Maples v. State*, 791 P.2d 788, 790 (N.M. 1990).  The Court notices the procedural posture of this claim: the Court is not reviewing a Workers' Compensation hearing officer's ruling.  For this claim,

Plaintiff cannot invoke the protection of administrative procedures because she did not properly exhaust her claim.

New Mexico law recognizes that the Workers' Compensation Act is not Plaintiff's exclusive remedy for retaliatory discharge. *See Michaels v. Anglo Am. Auto Auctions, Inc.*, 869 P.2d 279, 281 (N.M. 1994). ("[I]ssues involving the hiring and firing of employees are independent of, and separate from, the cause of action contemplated by the Workers' Compensation Act.") (quotations omitted). The New Mexico Supreme Court permitted a plaintiff to bring a retaliatory discharge claim based on the claim that the employer terminated him in violation of the clear public policy announced in the Workers' Compensation Act. *Id.* However, New Mexico governmental entities have not waived their immunity for wrongful termination claims. Thus, Plaintiff cannot bring her claim under the Workers' Compensation Act or under the tort of retaliatory discharge. Accordingly, Plaintiff's claim is dismissed.

### H. Workplace Violence and Negligent Supervision

In Count 6, Plaintiff claims that Defendants are liable for the torts of workplace violence and negligent supervision. Defendants argue that they are immune from these claims under the NMTCA. (Doc. 73 at 15.) In her Response, Plaintiff withdrew the claims in Count 6. (Doc. 85 at 17.) Accordingly, Count 6 is dismissed.

### I. First Amendment Claim

In Count 7, Plaintiff claims that Defendants violated her constitutional rights guaranteed by the First Amendment. Defendants claim that they are immune under the Eleventh Amendment and that they are not "a person" suable under Section 1983. (Doc. 73 at 19.)

The Supreme Court clearly ruled that "a State is not a 'person' within the meaning of § 1983." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 65 (1989). As such, Plaintiff cannot

bring her claims against ENMU and the Defendants in their official capacities.  State officials, however, are persons within the definition of the statute.  The Eleventh Amendment does not bar suits against state officials sued in their personal capacity.  *Hafer v. Melo*, 502 U.S. 21, 30-31 (1991).   Defendants sued in their personal capacities, however, are entitled to qualified immunity.

Defendants claim that Plaintiff failed to plead claims against the Defendants in their personal capacities, requesting the Court to adopt the more stringent pleading standards that other courts have adopted.  Plaintiff's Complaint does not specify whether she brings her claims against the individually-named Defendants in their official or their personal capacity.   In her Response, Plaintiff clarifies that she intended to sue Defendants in their official and personal capacities, as evidenced by the factual averments.  (Doc. 85 at 2.)

In the Tenth Circuit, Plaintiff has sufficiently named Defendants in both their official and personal capacities.  *See Trapp v. U.S. Marshals Serv.*, 139 F. App'x 12, 14-15 (10th Cir. 2005). In *Trapp*, the Tenth Circuit concluded that a pro se plaintiff, whose complaint expressly indicated that he was suing defendants only in their official capacities, nonetheless named the defendants both in their official and personal capacities.  *Id.* at 15.  Based on "the context of the complaint," including the plaintiff's factual averments and his attempt to seek punitive damages, the Tenth Circuit ruled that the plaintiff raised claims against the defendants in both capacities. *Id.*  The Tenth Circuit was careful to point out that the individual defendants did not suffer any prejudice from the meager notice because they argued qualified immunity in their motion to dismiss.  *Id.*  The Court finds the same is true here.  As a whole, Plaintiff's Complaint raises claims against Defendants in both capacities.   Additionally, Defendants raised qualified

immunity arguments in their Motion to Dismiss, anticipating against them in both capacities. (Doc. 73 at 20.)

Defendants finally argue that Plaintiff's First Amendment claim fails as a matter of law. Public employees are protected by the First Amendment and "public employers may not condition employment on the relinquishment of constitutional rights." *Lane v. Franks*, 134 S. Ct. 2369, 2377 (2014). To state a claim, the public employee must speak "as a citizen on a matter of public concern." *Id.* at 2378. If the public employee can show that an employer retaliated against her for speaking about a matter of public concern, then the court must consider "whether the relevant government entity had an adequate justification for treating the employee differently from any other member of the general public." *Id.*

In her Complaint, Plaintiff alleges that Defendants retaliated against her for expressing:

> [H]er opinions regarding employer wrongdoing and because of her complaints and stated opinions about her being significantly underpaid and poorly treated, about the harassment against her for complaining about Defendant Quick, and her complaints regarding Defendant ENMU's failure to accommodate her disability, and for her complaints about the mishandling of her claim for workers['] compensation."

(Doc. 4 ¶ 101.) The entirety of Plaintiff's opinions relate to her own work conditions. Defendants argue that Plaintiff's speech was "personal in nature to her" and not a matter of public concern. (Doc. 73 at 21-22.)

"Speech involves matters of public concern 'when it can be fairly considered as relating to any matter of political, social, or other concern to the community, or when it is a subject of legitimate news interest.'" *Lane*, 134 S. Ct. at 2380 (quoting *Snyder v. Phelps*, 131 S.Ct. 1207, 1216 (2011)). "The inquiry turns on the 'content, form, and context' of the speech." *Id.* (quoting *Connick v. Myers*, 461 U.S. 138, 147-48 (1983)). "Speech relating to internal personnel disputes and working conditions ordinarily will not be viewed as addressing matters of public concern."

*Morris*, 666 F.3d at 661 (quoting *David v. City & Cnty. of Denver*, 101 F.3d 1344, 1355 (10th Cir. 1996)).  Private grievances over personal working conditions, like the complaints Plaintiff alleges she expressed, do not "pertain to a matter of public concern on [their] face." *Id.* at 662.

Because the content of Plaintiff's speech was not related to a matter of public concern, Plaintiff has not stated a claim for a First Amendment violation.  Defendants are entitled to qualified immunity and Plaintiff's claim is dismissed.

### J.   State Assault and Battery Claim

In Count 8, Plaintiff claims that Defendants are liable for Defendant Quick's assault and battery.  Defendants argue that they are immune under the NMTCA.  (Doc. 73 at 15-17.) Plaintiff does not contest this reading of New Mexico statutory law, but responds that she can sue the tortfeasor, Defendant Quick.  (Doc. 85 at 13.)

An assault under New Mexico law requires an "unlawful act, threat, or menacing conduct which causes another person to reasonably believe [s]he is in danger of receiving an immediate battery."  *See* N.M. Stat. Ann. § 30–3–1(B); *see also Chavez v. Thomas & Betts Corp.*, 396 F.3d 1088, 1100 (10th Cir. 2005).  A battery under New Mexico law requires an unlawful, harmful, intentional, or offensive touching of another.  *Chavez*, 396 F.3d at 1100 (citing *State v. Ortega*, 827 P.2d 152, 155 (Ct. App. 1992)).  Plaintiff states in her Complaint that Defendant Quick regularly pushed down on Plaintiff's shoulder tumor and once threatened her "with clenched fists."  (Doc. 4 ¶¶ 18-19.)  These allegations state a plausible claim for assault and battery against Defendant Quick.  The assault and battery claims against all other Defendants are dismissed.

### K.  Contract Claims

In Counts 9-11, Plaintiff claims that Defendants violated her contractual rights under New Mexico state law.  Citing New Mexico Annotated Statue section 37-1-23(A), Defendants

argue that they are immune from contract claims unless the employee had "a valid written contract." (Doc. 73 at 22.) Plaintiff did not have a written contract with EMNU. In her Response, Plaintiff withdrew the claims in Counts 9-11. (Doc. 85 at 17.) Accordingly, Counts 9-11 are dismissed.

## IV.    CONCLUSION

Under the *Ex Parte Young* exception, Plaintiff can proceed with her claim for FMLA interference, ADA reasonable accommodation, ADA retaliation, and ADA discrimination. However, the relief she can seek is limited to reinstatement.

Plaintiff did not allege sufficient facts in support of her other federal claims. Plaintiff failed to state a claim to support her ADEA claim, Title VII claims, ADA hostile work environment claim, and First Amendment claim.

Under state law, Plaintiff can proceed with her NMHRA disability claims. She may also bring her assault and battery claim against Defendant Quick. All other state claims are barred under the NMTCA.

**THEREFORE**,

**IT IS ORDERED** that Defendants' Motion to Dismiss and/or Motion for Summary Judgment (Doc. 73) is **GRANTED** in part and **DENIED** in part.

_____

**ROBERT C. BRACK**
**UNITED STATES DISTRICT JUDGE**

27