IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

ROBINETTE LONG,

       Plaintiff,

v.                                  No. CIV 13-380 RB/SMV

EASTERN NEW MEXICO UNIVERSITY
BOARD OR REGENTS, LEE QUICK,
JANE BLAKELEY, SCOTT SMART, KATHY
KNOLL, and JULIE GAWEHN,

       Defendants.

**MEMORANDUM OPINION AND ORDER**

After the Plaintiff in this case conceded that she could not pursue her federal claims, the Court had to evaluate whether it would continue to exercise supplemental jurisdiction over her remaining state law claims. Having reviewed the parties' arguments and the relevant law, the Court declines to exercise its supplemental jurisdiction and dismisses Plaintiff's state law claims without prejudice.

**I.   BACKGROUND**

After being fired, Plaintiff Robinette Long sued her former employer for violations of federal and state law. (Compl.) Essentially, she claims that Defendant Eastern New Mexico University failed to accommodate her after a coworker's assault exacerbated her post-traumatic stress disorder. (*Id.*) Defendant Eastern New Mexico University, however, is a state university and, as a New Mexico state agency, is immune from suit in federal court. *See Memorandum Opinion and Order*, Doc. 98; *see also Sanchez v. Bd. of Regents of E. New Mexico Univ.*, 486 P.2d 608, 610 (N.M. 1971) (considering Eastern New Mexico University to be a public

institution and agency of the state); *Buchwald v. Univ. of New Mexico Sch. of Med.*, 159 F.3d 487, 495 (10th Cir. 1998) (explaining that state agencies are not subject to suit in federal court under the Eleventh Amendment).

Granting in part Defendants' motion to dismiss on the basis of sovereign immunity, the Court dismissed several of Plaintiff's federal claims. Some of Plaintiff's federal claims fit the *Ex Parte Young* exception to the sovereign immunity doctrine. Accordingly, the Court denied Defendants' motion in part. After surviving the sovereign immunity challenge, Plaintiff had remaining federal claims for prospective, injunctive relief—in the form of reinstatement—under the Family Medical Leave Act and the Americans with Disabilities Act. (Doc. 98 at 27.) The Court also exercised supplemental jurisdiction over Plaintiff's state law claims under the New Mexico Human Rights Act against Defendants and an assault and battery claim against Defendant Quick. (*Id.*)

Two weeks before trial, Plaintiff submitted her proposed voir dire questions. Among others, Plaintiff asked the following question:

> Would the fact that the New Mexico Education Retirement Board decided in 2014 that the plaintiff is now permanently disabled make you more or less likely to think that the plaintiff was probably harmed as she claims by the defendants?

(Doc. 140 ¶ 49.) The Court was troubled by this question because if Plaintiff is permanently unable to work, then she likely is unfit to seek reinstatement. Without her claim for reinstatement, Plaintiff had no readily apparent basis for pursuing her federal claims. The Court, *sua sponte*, notified the parties of its concern on March 11, 2015, and set a status conference on March 16, 2015. (Doc. 144.)

At the telephonic status conference, Plaintiff agreed that, given her permanent disability, she could no longer pursue her claim for reinstatement, her only remaining federal claim. In

addition to receiving benefits for her permanent disability, Plaintiff's counsel reported that, in her own opinion, Plaintiff did not believe she would be able to work again. Plaintiff's counsel reported that his client sought permanent disability benefits without his knowledge and that he only found out in January 2015 that his client was permanently disabled. Defense counsel said that based on Plaintiff's deposition testimony, they were aware that Plaintiff considered herself unfit for reinstatement. Neither party brought this to the attention of the Court. After this conference, the Court vacated the trial setting. (Doc. 145.)

    The Court held a second status conference on March 19, 2015, to allow the attorneys to make their arguments on the record. (Doc. 146.) At this conference, Plaintiff's counsel admitted that he was changing his position. (Tr. 12:24-13:2.) Plaintiff said she was not prepared to voluntarily relinquish her federal claims. (Tr. 4:25-5:6.) Plaintiff acknowledged that a New Mexico state agency determined she was permanently disabled and that she is currently unable to work. (Tr. 4:2-6.) Plaintiff also told her counsel that she does not believe that she will be able to "do that job, even in six months." (Tr. 15:19-23.) Plaintiff's counsel took this to mean that Plaintiff might be able to work another job after six months. (Tr. 15:17-24.) At the first status conference, Plaintiff's counsel explained that he believed in miracles.

    Characterizing Plaintiff's words as "a significant change and departure from" her previous position, Defense counsel recounted that Plaintiff's counsel unequivocally stated that Plaintiff was permanently disabled and that he could not, in good conscience, let her return to work with her former supervisors. (Tr. 6:14-7:8.) Defendants pointed to several pieces of evidence showing that it would be inconsistent for Plaintiff to now claim that she is ready, willing, and able to work. Defendants cited to Plaintiff's statements in three interrogatories and in her deposition. (Tr. 8:2-9:15.) Given the evidence, Defendants argue that "Plaintiff should

not be allowed to pursue a remedy in clear contradiction" of her deposition, interrogatories, and voir dire. (Tr. 7:9-14.) Defendants also noted that Plaintiff did not request reinstatement in the Pretrial Order. (Tr. 9:16-11:17.) However, the Court first pointed out this omission in January at the pretrial conference. (Doc. 97.) Plaintiff clarified that, as part of her request for "other relief," Plaintiff affirmatively sought reinstatement. (*Id.*) Defendants did not object.

Additionally, the Court asked whether it should continue to exercise supplemental jurisdiction over Plaintiff's remaining state law claims, given that Plaintiff is unable to pursue her federal claims. Defendants argued that, with no federal jurisdictional hook, it would be more appropriate to try the case in state court. Citing binding Tenth Circuit authority, Defendants posited that "both as a matter of comity and . . . federalism," the Court should allow the state courts to decide state law. (Tr. 18:22-19:15.) Plaintiff's counsel informed the Court that there were many reasons why trying the case in state court would be better for his client's case. (Tr. 17:25-18:5.) However, Plaintiff's counsel argued that the Court should continue to exercise supplemental jurisdiction given that the pending trial causes his client anxiety and is an on-going burden on his client's health. (Tr. 17:20-22.) At the second status conference, Plaintiff's counsel informed the Court that his client has Stage IV chronic obstructive pulmonary disease ("COPD") and is on oxygen (Tr. 17:1-9), notwithstanding that, at the first status conference, Plaintiff's counsel urged the Court to reset the trial for a later date. And, as Defendants noted, in January, Plaintiff requested a four-month postponement of the trial date. (Tr. 20:1-5; Doc. 97 at 2.)

Finally, in an effort to accommodate the parties, the Court offered to hold a settlement mediation with the United States Magistrate Judge in place of the vacated trial. (Tr. 6:2-11.)

4

Considering Plaintiff's failing health, the Court reasoned that settlement mediation might benefit all parties. Plaintiff, however, declined to attend. (*Id.*; Tr. 22:19-21.)

## II.  DISCUSSION

The Court has two determinations to make. First, whether Plaintiff, in light of the evidence of her permanent disability, can continue to pursue her federal claims. Second, if the federal claims are dismissed, whether the Court should continue to exercise supplemental jurisdiction over Plaintiff's state law claims.

### A. Federal Claims

Without a doubt, there is a difference—both medically and legally—between disability and permanent disability. During the second status conference, Plaintiff countered Defendants' copious evidence of Plaintiff's statements that she was unable to work by noting the difference between being disabled and being permanently disabled. (Tr. 13:9-11.) Plaintiff's counsel noted that Plaintiff has been disabled since the start of the case, but he has only known about her permanent disability since January. The Court heartily agrees with Plaintiff that there is no inherent contradiction in someone identifying as disabled and seeking work. That is the heart of the Americans with Disabilities Act. There is, however, something innately contradictory in someone seeking work while at the same time saying that she will never be able to work again, pursuing a permanent disability determination, and receiving permanent disability retirement benefits.

Here, Plaintiff represents that she is receiving disability retirement benefits from the New Mexico Educational Retirement Board on the basis that she is permanently disabled. (Voir Dire, Doc. 140 ¶ 49.) To be eligible for disability retirement benefits, a person must be "totally disabled to continue [her] employment" and "unable to obtain and retain other gainful

5

employment commensurate with [her] background, education, and experience." N.M. Stat. Ann. § 22-11-35(A). Before the Board certifies an applicant as permanently disabled, she must submit to a medical examination by a board-designated medical doctor. *See* N.M. Stat. Ann. § 22-11-35(B) (stating requirement); N.M. Stat. Ann. § 22-11-2 R) (defining "medical authority"). Plaintiff, now, is permanently disabled under New Mexico law. Furthermore, Plaintiff's counsel says his client is not likely to be able to work any job for at least the next six months and that Plaintiff thinks she will never work again. (Tr. 4:3-10.) Plaintiff's counsel's optimistic hope that his client might be well-enough to work one day is undermined by his dire predictions about her deteriorating health with respect to refiling the claim in state court.

Generally, in order to accept the remedy of reinstatement, a plaintiff must be ready, willing, and able to work. *See generally Sure-Tan, Inc. v. N.L.R.B.*, 467 U.S. 883, 904 (1984) (holding that reinstatement is unavailable where employees are not lawfully available for employment); *Boggs v. Rio Grande Indus., Inc.*, 216 F.3d 1086, No. 99-1161, 2000 WL 827483, *2-3 (10th Cir. 2000) (affirming that a finding of disability is inconsistent with the representation that a person is able and willing to work). Given the evidence and legal-determination of Plaintiff's permanent disability, the Court cannot in good conscience permit Plaintiff to pursue reinstatement.

Plaintiff, who seeks to remedy her federal claims under the *Ex Parte Young* doctrine, has not alleged any form of equitable, prospective relief other than reinstatement.[1] If she cannot

---

[1] In most employment cases where reinstatement is unworkable, a plaintiff may be awarded front pay. However, front pay awards are likely barred by the Eleventh Amendment. *See Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690, 698 (3d Cir. 1996) (citing *Edelman v. Jordan*, 415 U.S. 651, 663 (1974)) ("[R]elief that essentially serves to compensate a party injured in the past by the action of a state official, even though styled as something else, is barred by the Eleventh Amendment."); *Freeman v. Michigan Dept. of State*, 808 F.2d 1174, 1179 (6th Cir. 1987) (holding that front pay awards are barred because they would come from the state treasury); *Campbell v. Arkansas Dep't of Correction*, 155 F.3d 950, 962 (8th Cir. 1998) ("For purposes of the eleventh amendment, however, front pay is not analogous to the prospective relief permitted under Ex parte Young because it 'must be paid from public

pursue reinstatement, then the Court has no means of remedying the wrongs she alleges under federal law. When a Court cannot remedy a wrong, the claim is considered moot. To be considered a case or controversy within the meaning of the Constitution and this Court's jurisdiction, "throughout the litigation, the plaintiff 'must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision.'" *Spencer v. Kemna*, 523 U.S. 1, 7 (1998) (citing *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 477 (1990)). "[M]ootness will end jurisdiction where a controversy no longer exists." *See Pittsburg Cnty. Rural Water Dist. No. 7 v. City of McAlester*, 358 F.3d 694, 706 (10th Cir. 2004) (citing *Spencer*, 523 U.S. at 7); *see also Kyles v. Chester*, No. 09-3266-RDR, 2011 WL 855801, at *2 (D. Kan. Mar. 9, 2011) ("If events that occur subsequent to the filing of a lawsuit or an appeal deprive the court of the ability to give meaningful relief, then the case is moot and must be dismissed."). Because the Court cannot give Plaintiff any meaningful relief on her federal claims, those claims are moot and must be dismissed.

### B. State Law Claims

The Court had original jurisdiction over Plaintiff's federal question claims, so the Court has the requisite subject matter jurisdiction to hear Plaintiff's state law claims. *See Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639-40 (2009). After a court dismisses a plaintiff's federal claims, "the court generally retains discretion to exercise supplemental jurisdiction, pursuant to 28 U.S.C. § 1367, over pendent state-law claims." *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006). "A district court's decision whether to exercise that jurisdiction after

---

funds in the state treasury.'" (quoting *Edelman*, 415 U.S. at 651)). Here especially, given that Plaintiff may never be able to work again, front pay would not cover future lost wages; the substance of the relief would be backward-looking. Backward-looking, monetary-relief is barred under Eleventh Amendment doctrine. When determining if a plaintiff's requested relief is barred by the Eleventh Amendment, the Supreme Court commands courts to look at the substance rather than the form of the relief. *Papasan v. Allain*, 478 U.S. 265, 279 (1986).

dismissing every claim over which it had original jurisdiction is purely discretionary." *Carlsbad Tech.*, 556 U.S. at 639.

Under United States Code Section 1367(c), a federal court has discretion to decline jurisdiction over a pendent state-law claim in the following circumstances:

> (1) the claim raises a novel or complex issue of State law,
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c). "[A] federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity in order to decide whether to exercise jurisdiction over a case brought in that court involving pendent state-law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988); *see also Merrifield v. Bd. of Cnty. Comm'rs*, 654 F.3d 1073, 1085 (10th Cir. 2011).

Here, three of the four statutory factors weigh in favor of dismissal. First, all of the federal claims, over which the Court had original jurisdiction, have been dismissed. *See* § 1367(c)(3). "When all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims." *Smith v. City of Enid*, 149 F.3d 1151, 1156 (10th Cir. 1998); *see also Brooks v. Gaenzle*, 614 F.3d 1213, 1229 (10th Cir. 2010) ("[I]f federal claims are dismissed before trial, leaving only issues of state law, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice."). If the Court retained jurisdiction despite the absence of federal claims, it would be deviating from the norm.

Second, Plaintiff's state law claims substantially predominate over her federal law claims. *See* § 1367(c)(2). Even before the Court requested a status conference, all of Plaintiff's proposed jury instructions related to her state law claims. (Doc. 141.) This suggests that the state law claims were driving the litigation. Now that Plaintiff cannot pursue her federal claims, the state law claims certainly predominate.

Finally, a Court should decline to exercise supplemental jurisdiction when the questions of state law are novel or complex. *See* § 1367(c)(1). Although employment and tort claims are not novel, the case is complicated by the fact that Plaintiff is haling a sovereign into court. "Notions of comity and federalism demand that a state court try its own lawsuits, absent compelling reasons to the contrary." *Thatcher Enters. v. Cache County Corp.*, 902 F.2d 1472, 1478 (10th Cir. 1990). The Court considers issues of comity particularly pressing here because Plaintiff is suing an arm of the state. In their motion to dismiss, Defendants argued that this Court never had jurisdiction to hear the claims under the New Mexico Human Rights Act. (Doc. 73 at 12-14.) Relying on persuasive precedent, the Court denied Defendants' argument, but the issue has yet to be decided by either the New Mexico or United States Supreme Courts. Ultimately, the state courts of New Mexico are best equipped to judge whether an arm of the state can be held liable under New Mexico law. As the Supreme Court said:

> Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law. Certainly, if the federal claims are dismissed before trial . . . the state claims should be dismissed as well.

*United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726 (1966); *see also Gullickson v. Sw. Airlines Pilots' Ass'n*, 87 F.3d 1176, 1187 (10th Cir. 1996) (quoting same).

In addition to the statutory factors, courts should also consider whether "the nature and the extent of pretrial proceedings, judicial economy, convenience, and fairness would be served

by retaining jurisdiction." *Id.* At this stage, the parties are nearly ready for trial. The values of judicial economy and convenience suggest that continuing with trial may be advisable. These values, however, are weakened by the fact that the attorneys have known that Plaintiff could not pursue her federal claims for two months, but neglected to inform the Court.

The Court is left to consider how to best serve the interests of fairness and comity. Specifically, the Court must decide whether Plaintiff's Counsel's prediction about his client's deteriorating health overcomes the general rule that state courts should decide matters of state law. Here, the Court holds that it does not. While the state of Plaintiff's health is uncertain, the Court is convinced that state courts are the best venues for trying Plaintiff's state claims. Because the parties have substantially completed discovery[2] in federal court, they will be prepared to move forward swiftly in state court. Plaintiff herself requested a later trial setting, just ten weeks ago and again at the first telephonic status conference, suggesting that time is not necessarily of the essence. On its own accord, the Court vacated the current trial setting and would have to reschedule trial for another date many months out. In that time, a state court may also be able to schedule a trial setting. The Court considers dismissal to be the best resolution of the statutory guidelines and the fairness factors.

Because this case was filed originally in this Court, the Court will dismiss Plaintiff's state law claims without prejudice. Plaintiff has a limited time to refile her claims in state court. *See* 28 U.S.C. § 1367(d) ("The period of limitations for any claim asserted under [supplemental jurisdiction]. . . , shall be tolled while the claim is pending and for a period of 30 days after it is dismissed unless State law provides for a longer tolling period."); *see also Wittner v. Banner Health*, 720 F.3d 770, 781 (10th Cir. 2013) (explaining that after a court declines to exercise

---

[2] Plaintiff states that she would like to pursue additional discovery.

supplemental jurisdiction over a plaintiff's state law claims, the plaintiff has 30 days to refile the claims in state court); *Gathman-Matotan Architects & Planners, Inc. v. New Mexico*, 787 P.2d 411, 413 (N.M. 1990) ("[T]he filing of an action later dismissed without prejudice for reasons such as . . . a federal court's discretionary refusal to entertain pendent jurisdiction tolls the statute of limitations applicable to the claim.").

Finally, the Defendants filed a motion for sanctions related to a cancelled deposition. (Doc. 147.)  The Court does not wish to delay the litigation of the merits of Plaintiff's case.  So it will dismiss the substantive claims now, allowing the Plaintiff to refile, but the Court will retain jurisdiction for the sole purpose of deciding Defendants' Motion for Sanctions.  *See Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 395 (1990) ("[N]othing in the language of Rule 41(a)(1), Rule 11, or other statute or Federal Rule terminates a district court's authority to impose sanctions after such a dismissal."); *Chambers v. NASCO, Inc.*, 501 U.S. 32, 56 (1991) ("[W]e have made clear that, even under Rule 11, sanctions may be imposed years after a judgment on the merits."); *Lundahl v. Halabi*, 773 F.3d 1061, 1071-72 (10th Cir. 2014) ("Even when a court lacks subject-matter jurisdiction over the substantive merits of a case, it retains the inherent authority to issue orders on matters collateral to the merits and to conduct sanction proceedings and to impose any sanction for abusive conduct for which sanctions are authorized by the federal rules of procedure . . . .").

### III.    CONCLUSION

One week before trial, Plaintiff acknowledged she could no longer pursue reinstatement, the only remedy for her federal claims.  After examining the statutory factors and the values of judicial economy, fairness, and comity, the Court declines to continue to exercise supplemental jurisdiction over Plaintiff's state law claims.

**THEREFORE**,

**IT IS ORDERED** that Plaintiff's federal claims are dismissed with prejudice and Plaintiff's state law claims are dismissed without prejudice.

**IT IS FURTHER ORDERED** that the Court will retain jurisdiction over these parties for the express purpose of deciding Defendants' Motion for Sanctions against Plaintiff and her Attorney. (Doc. 147.)

                                         */s/ Robert Brack*
                                         **ROBERT C. BRACK**
                                         **UNITED STATES DISTRICT JUDGE**